IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MIDWEST OFFICE, INC.,<br><br>　　　　Plaintiff,<br><br><br><br><br><br>　　　　vs.<br><br><br>RHB DIRECT, LLC, dba OFFICE FURNITURE BLOWOUT,<br><br>　　　　Defendant. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO AMEND, DENYING MOTION FOR LEAVE TO INTERVENE AS MOOT, AND DETERMINING ATTORNEY FEES<br><br><br><br><br><br>Case No. 2:08-CV-966 TS |

Before the Court are three related motions arising from the Plaintiff's mistake concerning the proper party-defendant's identity—a mistake resulting from the failure of the owner of the dba "Office Furniture Blowout" to update its information in the public records when it purchased the dba.

The Court grants Plaintiff's Motion to Amend under Fed.R.Civ.P. 15(c)(1)(C) to change the name of the defendant to the actual owner of the dba; denies as moot the Motion to Intervene filed by the dba's actual owner; and determines that the amount of the reasonable attorney fees previously awarded to Plaintiff are $6,687.

1

## I.   BACKGROUND

The background facts are briefly summarized as follows.  On December 18, 2008, Plaintiff filed this case against "RHB Direct, LLC dba Office Furniture Blowout."   At that time, ML2, LLC (ML2), a Utah limited liability company, had purchased the dba Office Furniture Blowout.  M. Legones is the owner and manager of ML2.  However, after the purchase, ML2 did not update its dba's information with the Utah Department of Commerce.[1]  As a result, Office Furniture Blowout was still listed on the Department of Commerce's website as a dba owned by its former owner, RHC Direct, LLC, with its registered agent being one R. Caldwell (Caldwell).  Plaintiff agrees that when drafting its Complaint, it mistakenly identified RHB Direct as RHC Direct.[2]

Plaintiff served the Complaint on one Legones instead of Caldwell.  Plaintiff alleges that, upon being contacted by Plaintiff's counsel prior to the filing of the complaint, Caldwell informed Plaintiff's counsel that the Office Furniture Blowout dba had been sold to Legones.   Plaintiff's counsel then contacted Legones who reported that the "Office Furniture Blowout" dba was represented by attorney David Turcotte.

On approximately December 31, 2008, the information for the Office Furniture Blowout dba was updated with the Utah Department of Commerce to show ML2 as its owner and registered agent.[3]  ML2's newly listed address as agent for the dba was the

---

[1]The record is not clear on the date when ML2 purchased the dba.  Legones' March 6, 2009 Affidavit stated that the purchase had occurred "over a year ago." Docket No. 21 Ex. A.

[2]*E.g.*, Docket No. 22 at 2 n.1.

[3]Docket No. 23, Ex. H.

2

same address where Legones had been served with the original Complaint.[4]  Plaintiff was apparently not aware of the updated information until February 2009.

On Plaintiff's Motion, default was entered against RHB Direct on January 15, 2009. On February 3, 2009, attorney Turcotte filed an Answer on behalf of "RHB Direct dba office Furniture Blowout"—the incorrectly named defendant.  The next day, Plaintiff moved to strike the Answer and also a Motion for a default judgment.

On March 11, 2009, attorney Turcotte filed an objection to the Motions to strike and for default judgment and moved to set aside the default certificate.   It was filed on behalf of "defendants"  and "respondents" but did not specify exactly the entities on whose behalf it was filed.  Attached to the filing were the affidavits of Legones and attorney Turcotte. Legones' Affidavit admits he was served with the Complaint, was aware there was a dispute between Plaintiff and his company, but avers that he was confused on whether he needed to respond because he had been served for the wrong company.  Legones' and Turcotte's Affidavits both allege Turcotte was unavailable during the period allocated to file a timely answer due to a personal medical condition.

Plaintiff filed an opposition to the Motion to Set Aside the Default and requested that, if it were set aside, it be awarded attorney fees incurred with respect to the default. There was no response to Plaintiff's request to condition a setting aside of the default on an award of attorney fees.

---

[4]*Compare id*. with Docket No. 4 (Return of Service).

On May 13, 2009, the Court denied Plaintiff's Motion for Entry of a Default Judgment, granted the Motion to set aside the default, and set aside the default "on the condition that Defendant pay Plaintiff's attorney fees incurred in connection with the default."[5]

Plaintiff then filed a Notice of Correction of Caption which the Court ordered disregarded.[6]

Plaintiff filed an itemization of its attorney fees claiming it incurred $23,382 as attorney fees in connection with the default.  ML2 responded by filing a Motion to Intervene.  In the Motion to Intervene, attorney Turcotte for the first time specified that he represented ML2.  The Motion to Intervene argues that the Court's order conditioning setting aside the default on the payment of Plaintiff's attorney fees bound only RHB Direct, LLC, a non-existent entity, and that ML2's interests were not represented.

Plaintiff responded to the Motion to Intervene with its Motion to Amend the case to show ML2, dba Office Furniture Blowout as the defendant and, pursuant to Fed.R.Civ.P. 15(c), to have the amended complaint relate back to the date of the original filing.

## II.   DISCUSSION

The Court will first address Plaintiff's Motion to Amend.  Rule 15 provides that leave to amend a complaint "shall be freely given when justice so requires."  Under this rule, leave to amend may generally be refused only on "a showing of undue delay, undue

---

[5]Docket No. 26 at 4 and 5 (awarding "reasonable attorney fees directly incurred in relation to the default").

[6]Docket No. 28.

prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[7]

Plaintiff moves to amend pursuant to Rule 15(c)(1)(C) which outlines the following "three conditions, each of which must be satisfied in order to permit relation back of an amended complaint seeking to substitute a newly-designated defendant."[8]

> First, the claim asserted against the newly-designated defendant must satisfy the terms of Rule 15(c)(1)(B), which provides that the claim must arise "out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading." Second, "within the period provided by [Federal Rule of Civil Procedure] 4(m) for serving the summons and complaint, the party to be brought in by amendment" must have "received such notice *of the action* that it will not be prejudiced in defending on the merits." Third, it must appear that within the same time frame the newly-designated defendant either "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."[9]

The Court finds that the first condition is met because the claim asserted against ML2 in the proposed Amended Complaint arises out of the occurrences described in the original complaint.

The second condition—notice—requires "knowledge of the filing of suit, not simply knowledge of the incident giving rise to the cause of action."[10]   It is not disputed that the owner and manager of ML2 received actual notice of the filing of suit when he received the

---

[7]*Duncan v. Manager, Dep't of Safety, City & County of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) (quotation omitted).

[8]*Morel v. DaimlerChrysler AG*, 565 F.3d 20, 26 (1st Cir. 2009) (emphasis added, internal citations omitted, and quoting Fed.R.Civ.P. 15(c)(1)(C)(i)-(ii)).

[9]*Id*. (quoting Rule 15(c)(1)(C)(i)-(ii).

[10]*Id.* (citation omitted).

Summons and Complaint.  Where there was actual notice of the suit, and where Legones, as noted in his own Affidavit, knew that the complaint was made against the wrong company and that Plaintiff's dispute was with a dba owned by ML2, the correct defendant "will not be prejudiced in defending on the merits."[11]

ML2 argues that the notice was not timely under the terms of Rule 15(c)(1)(C), because it was not served with service of process in its own name within the time allotted for service of process under Rule 4(m).  However, Rule 15(c)(1)(C) requires only that ML2 received notice "of the action," not actual service of process in its own name, within the time allotted for service of process under Rule 4(m).

The third condition is knowledge of a mistake in identity. "To satisfy this condition, the plaintiff[] must show both that [it] made a mistake about the actual identity of the proper defendant and that, within the prescribed time, that party knew or should have known that, but for the mistake, it would have been sued."[12]  In this case, it is undisputed that Plaintiff made a mistake about the actual identity of the proper party-defendant.  As noted in Legones' Affidavit, ML2 notified Plaintiff, through counsel, that it would stipulate to the amended complaint against it and the removal of the wrongly identified party.  Thus, ML2 knew that, but for the mistake, it would have been sued.  This case is still in its early stages, discovery has not begun, a pretrial and scheduling order has not been entered, and trial is not scheduled.  Under these conditions, the Court finds that ML2 as the correct

---

[11]Fed.R.Civ.P. 15(c)(1)(C)(i).

[12]*Morel*, 565 F.3d at 27.

defendant "will not be prejudiced in defending on the merits."  Accordingly, the Court will grant the Motion to Amend and have the proposed Amended Complaint relate back. Because the Complaint will be amended to add ML2, its Motion to Intervene is moot.

As to the amount of the attorney fees, the Court notes that its award was limited to those "reasonable attorney fees directly incurred in relation to the default."  Having reviewed the entire record in this case, the following is clear from Plaintiff's counsel's time records: the misidentification of the Defendant that caused the default was brought to Plaintiff's attention by February 9, 2009, it was verified by February 10, 2009, and by February 12, 2009, attorney Turcotte had communicated to him ML2's offer to agree to accept service and have the complaint amended to name the correct entity.[13]   There followed several days of discussions between the parties.  Sometime after February 19, 2009, Plaintiff decided to continue to pursue its Motion seeking a default judgment against the mistakenly identified party.

Upon verifying the information, it would have been a simple matter to amend the complaint to correctly name the proper party as defendant and to have such amendment re-served at the address of ML2's designated agent—with or without ML2's agreement to accept service of process.  The Court finds that, after February 19, 2009, the fees incurred by Plaintiff were not "directly incurred in relation to the default."  Instead, they were incurred in relation to the Plaintiff's litigation strategy to continue its pursuit of its requests to strike the answer and obtain a default judgment despite knowing that the default had been

---

[13]*E.g.*, Docket No. 30, Ex. A (itemization of attorney fees, entries dated 2/9/09; 2/10/09; and 2/12/09).

entered as a result of the mistake concerning the proper party's identity. Plaintiff is entitled to pursue its chosen litigation strategy, but its subsequent attorney fees were not incurred as a direct result of the default. Accordingly the Court will award the attorney fees sought up through February 19, 2009, the approximate time when Plaintiff had had an opportunity to verify the identity mistake and to consider its response. The Court finds those fees, in the amount of $6,687, are reasonable and were directly incurred in relation to the default. Plaintiff also seeks costs, which it itemizes only as a flat percentage of the amount of the attorney fees. Where no specific costs have been shown to have resulted from the default, none are awarded.

In its Motion to Intervene and in its opposition to the Motion to Amend, ML2 contends that it is prejudiced because (1) it did not have an opportunity to contest the award of attorney fees; and (2) that it is not the entity against whom the fees were awarded. This position is contradicted by the record. The record shows, and the Court now finds, that ML2, through its owner and manager Legones, sought to set aside the default entered against its dba—although its dba was shown as owned by a mistakenly named entity. The Court granted that relief. In connection with its Motion, ML2 had the opportunity to contest Plaintiff's position that its requested relief be conditioned on the award of attorney fees.

The Court imposed the attorney fees as a condition of setting aside the default because it is clear from the record that the mistake in naming the proper party initially resulted from ML2's failure to provide accurate and current information about its dba to the

Utah Department of Commerce.  There is nothing unfair in imposing this condition as to ML2 when it was ML2 that sought to set aside the default.

### III.  ORDER

Based on the foregoing, it is therefore

ORDERED that Plaintiff's Motion to Amend (Docket No. 35) is GRANTED and, pursuant to Fed.R.Civ.P. 15(c)(1)(C), the amendment shall relate back to the date of filing. Plaintiff shall file its Amended Complaint no later than July 31, 2009.  It is further

ORDERED that ML2's Motion to Intervene (Docket No. 31) and Request for Oral Argument are DENIED as moot.  It is further

ORDERED that the amount of the reasonable attorney fees directly incurred in relation to the default are $6,687 (Docket No. 29) .

DATED   July 27, 2009.

BY THE COURT:

_____

TED STEWART
United States District Judge